# EXHIBIT A

Approved, SCAO

| Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|

| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>17th    **JUDICIAL CIRCUIT**<br>Kent    **COUNTY** | **SUMMONS** | **CASE NO.**<br>05548 |

**Court address**
180 Ottawa Ave NW, Grand Rapids, MI 49503

**Court telephone no.**
(616) 632-5220

| Plaintiff's name, address, and telephone no.<br>Challenge Mfg. Company, LLC<br>3200 Fruit Ridge<br>Grand Rapids, MI 49544<br>616-735-6500 | v | Defendant's name, address, and telephone no.<br>FLUXYM CANADA, INC.<br><br>2075 rue Robert Bourassa<br>Suite 1700<br>Montreal (Quebec) H3A 2L1<br>Canada |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Jeffrey T. Stewart P24138<br>Seikaly & Zeman, PC<br>38500 Woodward Ave, Ste 350<br>Bloomfield Hills, MI  48304-5053<br>248-785-0102 | | CURT A. BENSON<br>(P-38891) |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
- [ ] There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
- [ ] There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
- [ ] It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
- [x] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
- [ ] MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
- [x] There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
- [ ] A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in [ ] this court, [ ] _____ Court, where

it was given case number _____ and assigned to Judge _____

The action [ ] remains [ ] is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUN 0 7 2024 | Expiration date<br>SEP 0 6 2024 | Court clerk<br>LISA POSTHUMUS LYONS |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

Summons  (3/23)                                                    Case No. _____

**PROOF OF SERVICE**

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

**CERTIFICATE OF SERVICE / NONSERVICE**

☐ I served     ☐ personally     ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)    a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|------|--------------------------|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---------------|----------------|-------|--|-----------|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____ .
Attachments (if any)                                   Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

CHALLENGE MFG. COMPANY,
LLC., a Delaware limited liability
company,

    Plaintiff,

v.

FLUXYM CANADA, INC.

    Defendants.

C.A. No. **05548**

CURT A. BENSON
(P-38891)

_____/

### Certifications

I hereby certify that there is no other action pending in this or any other court between these parties arising from the same transaction or occurrence, nor has any such action been dismissed after being assigned to a judge. There is a related action pending in the Delaware court against the other entity involved in the project out of which this claim arises. That action is being pursued in that court because of a choice of jurisdiction provision that does not permit both parties to be sued in this court.

                                    _/s/ Jeffrey T. Stewart_

I hereby certify that this is a case within the jurisdiction of the business court under MCL 600.8035(1) and (3) because it arises from a commercial dispute between business entities and seeks both legal and equitable relief within the jurisdiction of the circuit court.

                                    _/s/ Jeffrey T. Stewart_

## COMPLAINT

Plaintiff Challenge Mfg. Company, LLC. ("Plaintiff", "Challenge"), by counsel, for its

Complaint against Defendant Fluxym Canada, Inc. ("Defendant", ("Fluxym), states as follows:

### NATURE OF THE ACTION

1.    This action claims a breach of contract between Challenge as purchaser and Fluxym

Scanned on: 6/5
By: KH

as seller/service provider. Fluxym was contracted to integrate an automated accounts payable software system offered by a third-party software-as-a-service provider, known as Ivalua, Inc, into Plaintiff's existing software system.

2.    The contract anticipated an approximately 3-month implementation process.

3.    However, both Fluxym and Ivalua misrepresented and vastly overrepresented the ability of the Ivalua software, irrespective of Fluxym's services, to integrate with Challenge's existing systems.

4.    The effect was to delay the project from approximately three months to more than three years, during which time Challenge was paying to Ivalua $80,100 per year for each of the three years as an access fee to the platform that Challenge could never use.

5.    Over the same period of time, Challenge paid Fluxym $120,880.94 and paid another vendor sums in excess of $53,000 to assist in the project.

6.    Even at the end of more than three years, the software still could not meet the intended performance specifications in combination with Challenge's software systems.

7.    By this action, Challenge seeks a refund of all sums paid to Fluxym by Challenge and additional damages.

## PARTIES

8.    Plaintiff is a limited liability company organized under Delaware law and having its principal place of business in Kent County, Michigan.

9.    Fluxym Canada, Inc. is a Canadian corporation located in Montreal, Quebec.  Its address is: 2075 rue Robert Bourassa, Suite 1700 -  Montreal (Quebec) H3A 2L1.

## JURISDICTION AND VENUE

10.    This is an action founded upon Michigan law, with proper jurisdiction in Michigan

2

by virtue of a provision in the contract between the parties (Exhibit 1):

> 6. DISPUTES. This SOW [statement of work] and the resulting acts shall be governed by the laws of the State of Michigan, and any action arising from this SOW will be brought, heard, and decided in a state or federal court located in Kent County, Michigan. and contract.

11. Jurisdiction and venue are proper in this Court because of the contract provision cited in the preceding paragraph and the fact that a choice of Michigan law and jurisdiction is reasonable, since Plaintiff has its principal operations located here.

12. The amount in controversy exceeds $25,000 exclusive of interest, costs and attorney fees and equitable relief is requested.

## FACTUAL ALLEGATIONS

### A. The Parties Enter Into Contracts for the Implementation of an Automated Accounts Payable System

13. In July 2020, Challenge began reviewing vendors that could upgrade its manual accounts payable system to an automated, cloud-based accounts payable system. Challenge identified Ivalua as a potential vendor that could service its needs. Ivalua and Challenge began negotiating a contract where Ivalua would furnish an automated accounts payable system to replace the manual system employed by Challenge.

14. During negotiations, Challenge explained that the most important factor in choosing a vendor for the accounts payable system was its ability to integrate with Challenge's sophisticated manufacturing management software platform known as Plex. Ivalua represented that its platform had been successfully implemented with a Plex platform on at least one other occasion. As a result, Ivalua represented that it would be able to integrate Challenge's Plex platform with Ivalua's accounts payable system.

15. Ivalua's guaranty that the Plex platform would integrate with Ivalua's system was

critical to Challenge's decision in selecting an accounts payable vendor. Implementation would require knowledge of Ivalua's system parameters and capabilities and the characteristics of the Plex platform, that is by no means ubiquitous, even in Challenge's industry.

16. Early in the negotiations and prior to September 1, 2020, Ivalua recommended Fluxym, one Ivalua's industry partners, to perform the integration between Challenge's existing systems and Ivalua's software.

17. Ivalua represented that Fluxym was capable and experienced in such integration and that Fluxym's involvement was necessary for Ivalua's system to be installed and integrated with Challenge's existing system.

18. Ivalua's endorsement of Fluxym, made with Fluxym's knowledge and approval, was highly material to Challenge's decision to contract with Fluxym, since implementation would require knowledge not only of Ivalua's system parameters and capabilities but also the parameters and characteristics of the Plex system that is by no means ubiquitous, even in Plaintiff's industry.

19. Several meetings were held between Challenge and Ivalua for the purpose of determining the suitability of Ivalua's software for Challenge's purposes.

20. Fluxym was involved in meetings between Ivalua and Challenge and was aware of the representations made in those meetings concerning the adaptability of the Ivalua software and Fluxym's ability to provide implementation.

21. It was understood and stressed from the beginning that Challenge's supplier base would not be able or willing to conform to an electronic invoicing system mandated by Challenge or Ivalua. Consequently, the system had to have the flexibility and capability to electronically read a variety of different invoice formats from different suppliers and convert them into information that would articulate with Challenge's journals and books of account. This capability included but

was not limited to a process called optical character recognition ("OCR").

22.     Plaintiff would not have entered into the contract with Fluxym had it not believed that the Ivalua system, as implemented by Fluxym, could  be trained to electronically recognize different invoice formats without human intervention, and interface with its Plex system without compromising the features and capabilities of Plex.

23.     On December 29, 2020, contract documents were executed between Challenge and Fluxym (Exhibit 1[1]) and, separately, between Challenge and Ivalua.

24.     According to the contract between Plaintiff and Defendant, Plaintiff was required to pay for access to Fluxym's cloud-based platform, which included not only access to the software but to storage of potentially many terabytes of data on an ongoing basis.

25.     The fees agreed to be paid to Ivalua for this access and storage were $80,100 per year.

26.     Challenge made three such payments, the last being on June 7, 2023.

27.     The agreements between the parties anticipated that implementation of the system could be accomplished within a reasonable time, which the parties agreed should be approximately three months.

28.     Plaintiff would never have agreed to payment of access and storage fees on Fluxym's system for three years prior to any utilization.

29.     By the time Challenge terminated the contract, it had paid $240,300 to Ivalua for access, storage and utilization of Ivalua's platform, which Plaintiff never received.

30.     Over the same period, Challenge paid an additional $53,302 to another company,

---

[1] The version attached as Exhibit 1 is redacted for the protection of Fluxym's pricing and quoting information. Fluxym is in possession of the unredacted original.

MFGx, Inc. for services rendered in assisting in the interfacing of Plex and Ivalua.

31.     From the beginning, there were serious problems and delays.

32.     By way of example and not limitation, certain software modules that Challenge was told were not necessary proved to be essential to the implementation of the system.

33.     Plaintiff's expectation, based on representations made by both Fluxym and Fluxym, was that the implementation process would take approximately 8 months, after which Challenge would have full access to and utilization of the system.

34.     There were numerous delays caused by failure of Fluxym to apply the resources and personnel necessary to complete the project.

35.     The personnel assigned to the project from Fluxym changed frequently, requiring that replacement personnel become acclimated to the systems, with resulting loss of time and momentum.

36.     Notwithstanding representations that the OCR process referred to in paragraph 21 would be effective on a variety of invoice formats submitted by the array of suppliers with whom Challenge deals, this proved to be a source of significant delays and requests by Fluxym that Challenge vary its own procedures and information processing methods and/or accept compromised performance in order to implement the OCR system for invoices.

37.     In October of 2023, Challenge had reached a point where it no longer wished to continue with the project, and informed Ivalua and Fluxym.

38.     Both Ivalua and Fluxym promised to redouble their efforts to complete the project, representing that they could have it operational by December 8, 2023.

39.     After a succession of issues were presented between December of 2023 and March of 2024, Challenge was advised of yet another hurdle: an in ability of the system to handle invoices

that were not issued based upon a preexisting purchase order from Challenge to the supplier/vendor.

40. This requirement was not a new one and had existed in the scope of work from the beginning.

41. Based upon the continuum of problems and the fact that delivery of a working product was another nearly 3 months behind the latest promised schedule, Challenge sent a letter of termination of the contract to Fluxym and Fluxym on March 6, 2024.

42. The letter not only terminated the contracts but demanded a refund of all moneys paid on the failed project.

43. Both Ivalua and Fluxym responded, denying any breach or any intention of returning any part of the more than $361,000 paid to both companies since the inception of the project.

## COUNT I: BREACH OF CONTRACT

44. Plaintiff hereby incorporates by reference the allegations in all of the foregoing paragraphs and re-alleges them as though fully set forth herein.

45. The intended consideration for Challenge in the agreement with Fluxym was the integration of the Ivalua platform and the Plex system with the automation capabilities that were represented by both to be deliverable.

46. The specifics of the Fluxym's obligations were set forth in the Statement of Work executed by the parties in December of 2020.

47. The failure to bring online the system as represented and as committed in the SOW constitutes a breach of contract by Fluxym.

**WHEREFORE**, Plaintiff claims judgement against the defendant Fluxym in an amount to

which it is found to be entitled not less than all amounts paid to Fluxym, to Ivalua and to third parties, include MFGx, Inc.

**WHEREFORE**, Plaintiff requests a judgement and/or decree of rescission and entry of a judgement in favor of the Plaintiff and against the Defendant for all sums paid to Fluxym: $240,300 (Two-hundred eighty-thousand three hundred dollars), together with judgment interest, costs and attorneys fees.

## COUNT II: RESCISSION BASED UPON FAILURE OR LACK OF CONSIDERATION

48.     Plaintiff hereby incorporates by reference the allegations in all of the foregoing paragraphs and re-alleges them as though fully set forth herein.

49.     In addition to breach, with resulting damages to Challenge, the failure to deliver a usable product constitutes a lack of consideration or a failure of consideration or both as those terms are defined in Michigan law.

50.     Pursuant to Michigan law, a lack of consideration or failure of consideration is grounds for rescission of the contract, with return of the parties to the status quo ante, including refund of the $120,880.94  paid by Challenge to Fluxym.

**WHEREFORE**, Plaintiff requests a judgement and/or decree of rescission and entry of a judgement in favor of the Plaintiff and against the Defendant for all sums paid to Fluxym: $120,880.94, together with judgment interest, costs and attorneys fees.

## COUNT III: RESCISSION BASED UPON MUTUAL OR UNILATERAL MISTAKE

1.     Plaintiff hereby incorporates by reference the allegations in all of the foregoing paragraphs and re-alleges them as though fully set forth herein.

2.     There were several critical assumptions upon which the contract between the parties was based, including:

a.  that Ivalua's software would, with adaptation and enhancement from Fluxym, integrate with the Plex software system, which was at the heart of Challenge's management and accounting systems.

b.  that the Ivalua software, with adaptation and enhancement from Fluxym, could perform optical character recognition on a variety of invoice formats and convert the information contained in those invoices into a form that would be processed by the Fluxym software;

c.  that this processing would include the ability to read not only the invoiced amount but other identifying information so as to allocate the invoice amount to the correct supplier and purchase order;

d.  that the software, with adaptation and enhancement from Fluxym, could address invoices not related to a specific purchase order.

3.      Throughout the project and as of the time that the contract was terminated by Challenge, the software could not accomplish these tasks as the parties intended.

4.      The inability of the Fluxym software to accomplish both accurate and reliable optical character recognition and integrate with Plex were not merely a matter of reduced efficiency or somewhat less utility than initially projected. Without the ability to integrate with the Plex system and accomplish the automated recognition of invoices, human intervention was going to be continually required, which would defeat the entire purpose of having an automated accounts payable system.

5.      Challenge did not know and had no basis to know of these fundamental inabilities of the Ivalua software, nor Fluxym's inability to accomplish the necessary adaptation and enhancement as required by the contract.

6.     Any mistaken understanding related to the capabilities of Ivalua's capabilities occurred despite Challenge's exercise of ordinary care.

7.     Challenge did not assume the risk of these uncertainties in the contract documents or otherwise.

8.     Fluxym either knew of these highly material shortcomings, in which case there was a unilateral mistake on the part of Challenge that was chargeable to Fluxym, or it was also ignorant of these inherent shortcomings, in which case the contract was the product of mutual mistake.

9.     Challenge, due to continuing misrepresentations and delays attributable to Ivalua and Fluxym, only recently came to the conclusion that Ivalua's software would be impossible to integrate with its own.

10.     To the extent only Fluxym was mistaken, Fluxym knew of Challenge's misunderstandings but remained silent and thereby allowed and encouraged Challenge to act on its mistaken understandings by entering into the SOW and incurring fees for Fluxym's services.

11.     Under the circumstances, enforcement of the contract between Challenge and Fluxym would be unconscionable.

12.     This unilateral or mutual mistake, coupled with the fact that Challenge received no benefit or value whatsoever from its payment of to Fluxym, constitute grounds for rescission of the contract and return of the parties to the status quo ante, including refund of the $120,880.94 paid by Challenge to Fluxym.

**WHEREFORE**, Plaintiff requests a judgement and/or decree of rescission and entry of a judgement in favor of the Plaintiff and against the Defendant for all sums paid to Fluxym: $120,880.94, together with judgment interest, costs and attorneys fees.

### COUNT IV – FRAUD. MATERIAL MISREPRESENTATION, SILENT FRAUD

13.     Plaintiff hereby incorporates by reference the allegations in all of the foregoing paragraphs and re-alleges them as though fully set forth herein.

14.     At the time Fluxym was marketing its services to Challenge, it made representations, as specified in the factual allegations preceding, that the system would adequately read and translate a variety of invoice formats, both related and unrelated to specific purchase order, into a form that could be utilized by Challenge's existing computer systems.

15.     The specific representations included that the Ivalua system had been successfully integrated with Plex software for a previous customer.

16.     Challenge relied on this representation, as it knew that Plex was a unique software platform that would require substantial knowledge and experience in integrating an accounts payable system.

17.     The representation was false; and Fluxym later admitted that, although there had been a contract between Fluxym and a customer to perform this integration, it had never been accomplished.

18.     The materiality of this representation was borne out by the fact that integration with Plex proved to be an ongoing failing of the system, significantly contributing to Challenge's termination of the contract.

19.     The failure to explain the actual lack of a successful implementation of the Fluxym system in a Plex environment was alternatively a silent fraud in that:

20.     Fluxym knew this was an important factor for Challenge's purchase decision.

21.     Fluxym knew that, if Challenge was aware that the only project involving an attempt to integrate with Plex had never reached completion, Challenge would likely not have

made a decision to contract with Fluxym and commit with Ivalua for an $80,100 annual fee while there was no utilization of the system.

22.     Challenge was damaged by Fluxym's fraud and silent fraud not only through the payment of $120,880.94 to Fluxym, for implementation that never occurred successfully, but also payment of $240,300 to Ivalua for which it received no benefit, and payment of other expenses in excess of $53,000 to MFGx, Inc.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant as follows:

A.     Awarding Plaintiff damages in the amount of $414,482.94, together with pre- and post-judgment interest;

B.     Awarding Plaintiff its attorneys' fees, costs, and expenses in prosecuting this action;

C.     Granting such other and further relief as the Court deems just, proper, and equitable under the circumstances.

SEIKALY & ZEMAN, PC
Attorneys for Plaintiff

By:   _/s/ Jeffrey T. Stewart_
JEFFREY T. STEWART (P24138)
38500 Woodward Ave
Ste 350
Bloomfield Hills MI 48304-5053
Office Ph.  248-785-0102
Cell: 248-310-1016
Fax 248-419-3590
jts@sslawpc.com

Dated:  June 4, 2024

# EXHIBIT 1

# Statement of Work
## Challenge
## Manufacturing

09/25/2020

*2075 Boulevard Robert-Bourassa Suite 1700, Montreal, QC H3A 2L1*
*514-447-1637*
*info@fluxym.com*



## Table of Contents

Version History ................................................................................................................. 2
1.    Introduction ............................................................................................................. 4
2.    Project Scope .......................................................................................................... 5
   2.1.    Functionality Scope ............................................................................................ 5
   2.2.    Training Scope .................................................................................................... 5
   2.3.    Supplier activation .............................................................................................. 6
   2.4.    Interface Scope .................................................................................................. 6
   2.5.    Environment Architecture Scope ......................................................................... 7
3.    Implementation Strategy ........................................................................................ 7
   3.1.    Project Phases ................................................................................................... 7
   3.2.    Timeline and Resource Load ............................................................................... 8
4.    Cost Estimates ....................................................................................................... 9
   4.1.    Project Services Rate Card ................................................................................. 9
   4.2.    Professional Services Cost Estimate ................................................................... 10
5.    General Conditions ................................................................................................. 11
6.    Assumptions ........................................................................................................... 12
7.    Project Change Requests ........................................................................................ 14
8.    Approvals ................................................................................................................ 15
Appendix A - Fluxym - Change Request form ................................................................. 16
Appendix B - Roles and Responsibilities ....................................................................... 17
Appendix C - Governance ............................................................................................... 18

## Version History

| Date | Author | Revision Summary | Approver | Approval Date |
|------|--------|------------------|----------|---------------|
| 09/25 | Thierry Jaffry | Document creation | N/A | N/A |
| 11/9 | Thierry Jaffry | Revision | N/A | N/A |
| 12/22 | Thierry Jaffry | Revision based on Challenge Mfg feedback | N/A | N/A |

This Statement of Work ("SOW") for Challenge Mfg. Company, LLC ("Customer"), is effective as of the final date noted in the signatures in Section 8 (the "SOW Effective Date") and is entered into between Fluxym Canada Inc. ("Fluxym") and Customer.



Customer has requested that Fluxym provide the specific services described below in Section 7 (the "Services") in exchange for the applicable fees set forth in Section 9. Services not described below are outside of the scope of the Project.

1. TERM The term for the Project as contemplated by this SOW shall commence on the Effective Date and shall terminate upon the earlier of Acceptance of the Services or termination of the SOW in accordance with the terms of this SOW.

2. TERMINATION Either Party may terminate this SOW, effective immediately upon written notice to the other Party, if the other Party breaches this SOW or the Agreement in any material respect and fails to cure such breach within thirty (30) days after receipt of written notice specifying the nature of the breach and specific steps that should be followed to cure the breach. This SOW will automatically terminate in the event of a termination of the Agreement in accordance with its terms.

3. EFFECTS OF TERMINATION Upon expiration or termination of this SOW, Fluxym's obligation to provide further Services under this SOW will end and Fluxym will immediately cease such activities. Customer will pay Fluxym for all reasonable and actual time spent by Fluxym through the effective date of termination and any reimbursable expense incurred prior to the date of termination.

4. LIMITATION OF LIABILITY In the event that either party should be held liable under this SOW, the parties expressly agree that either party shall be held liable solely for remedying the direct, personal and immediate damage, not exceeding an amount of damages and interest equal to two times the amounts already paid by the Customer in regards with this SOW at the time the event causing the damage occurred. Any claim for compensation shall exclude indirect damage suffered by the Customer, specifically such as financial or commercial damages or lost profits. Any legal proceeding arising out of the SOW must be brought within six (6) months after the claim or cause of action arises.

5. NON-SOLICITATION OF STAFF For the term of this SOW and one year after termination of contractual relations, the Parties shall refrain from soliciting, hiring or contracting any employee of the other Party, regardless of specialization, to work directly or through an intermediary, even if the initial solicitation is made by the employee. In the event that either Party fails to discharge this obligation, it covenants to compensate the other Party (specifically for recruiting expenses, training costs, resulting damages to its personal reputation or commitments made on its behalf) by immediately paying it a fixed amount equal to the gross salary the employee would have been paid in the 12 months prior to his departure.

6. DISPUTES This SOW and the resulting acts shall be governed by the laws of the State of Michigan, and any action arising from this SOW will be brought, heard, and decided in a state or federal court located in Kent County, Michigan.



# 1. Introduction

Customer and Fluxym agree to the processes and deliverables described in the following sections of this SOW:

A   Section 2 defines the **Project Scope** for Products, Functionality, Interfaces (if any) and training.

B   Section 3 establishes the **Implementation Strategy** as it pertains specifically to the Project Team and Fluxym.

C   Section 4 confirms the Project's **Cost Estimates** guiding the Project Team.

D   Section 5 states the **General Conditions.**

E   Section 6 lists all the **Assumptions** on which the estimate is based.

F   Section 7 explains the **Project Change Request** process.

G   Appendices and other supporting documentation are referred to as:

      Appendix A. Fluxym - Change Request form

      Appendix B. Fluxym - Roles and Responsibilities – RACI - Responsible Accountable Consulted Informed

      Appendix C. Fluxym – Governance



## 2. Project Scope

### 2.1.   Functionality Scope

The functionality being provided is within a hosted solution system with a general source to pay functionality. Fluxym will deliver the in-scope functionality detailed below. The cost associated with such provision of Services under this SOW is set forth in Section 4 (the "Cost Estimates").

**MODULES IN SCOPE:**
- Ivalua AP Automation
- Ivalua Invoice Hub
- Ivalua Purchase Orders
- Ivalua Supplier Information Management

**Not in Scope:**
a)  By Default, anything not listed as in scope is considered out of scope.

### 2.2.   Training Scope

Fluxym will deliver the training components listed below; the in-scope training costs are included in the Cost Estimate:

a)  Application introduction overview to Customer project team during design phase – 4 hours
b)  Cross-Functional Customer Super User Demonstration training for customer specific configuration delivered in each sprint: 4 to 8 hours Per Sprint (max 32 hours)
c)  Fluxym to deliver UAT readiness session for Super Users – 8 hours
d)  Fluxym to deliver Administration Training Session – 16 hours
e)  Specialized training: No other training included in the scope of this SOW.

For Training sessions that contain training materials, Fluxym will provide to the Customer training materials (PPT or PDF files) used during the training session listed above.  No customized documentation is included in this scope of work.

**End Users Training:**

Fluxym will optionally prepare and conduct the End Users training. If the Customer decides to activate this option, those activities will be organized in a maximum class size attendance of ten (10) attendees.  The session will contain all the modules in scope (see 2.1) for a duration of 1 day.

This also includes conversion of training materials from Super User Audience to End User Audience.

This option is not included in the cost described in this SOW.



## 2.3.   Supplier activation

Fluxym will deliver Supplier Activation to facilitate the onboarding of the Customer's suppliers on the Ivalua platform.

This includes the following plan (to be adjusted if needed):

| | Step | Audience | Objective | When | Channel | Responsible |
|---|---|---|---|---|---|---|
| 1 | Validate data | Internal team members | Identify all suppliers<br>Verify supplier contact information | Readiness phase | Email + Meeting | Fluxym |
| 2 | Segmentation | Internal team members | Segment suppliers (A, B) by spend size and/or volume of transactions<br>Define strategy (channels, plan, tools, message..) for each segment | Design Phase | Workshop | Fluxym |
| 3 | Project notification letter | All suppliers | Communicate the benefits of the new platform and timeline.<br>Share next steps | Design Phase | Email | Challenge |
| 4 | Training for A suppliers | "A" suppliers | Train the suppliers on the new platform | UAT | Phone calls | Fluxym |
| 5 | Training for B suppliers | "B" suppliers | Train the suppliers on the new platform | UAT | Email + Webinar / Video | Fluxym |
| 6 | Onboarding report | Internal team members | Track the onboarding status of all suppliers | From step 4 to 7 | Excel file | Fluxym |
| 7 | Go Live communication | All suppliers | Formal announcement of the new platform | X days before Go Live | Email + 1-pager | Fluxym (content) + Challenge AP (sender) |
| 8 | Follow-up | Non compliant suppliers | Reinforce compliance policy after Go Live that suppliers should be submitting invoices through the portal | After Go live | Phone calls | Challenge AP |

## 2.4.   Interface Scope

### 2.4.1.   Interface Scope

There are 6 interfaces in scope:  Customer to provide further definition and scope.

| | Application | Content | Direction (Ivalua standpoint) | Number of flows |
|---|---|---|---|---|
| 1 | Plex | Suppliers | Inbound | 1 |
| 2 | Plex | Suppliers changes | Outbound | 1 |
| 3 | Plex | Purchase Orders | Inbound | 1 |
| 4 | Plex | Receipts | Inbound | 1 |
| 5 | Plex | Ok to Pay | Outbound | 1 |
| 6 | Plex | Payment records | Inbound | 1 |



Interfaces assumptions:

    a) Any additional or changed interfaces within the Project scope (including adding a flow to an interface), or assumptions listed above not met, will have an impact on the timeline and effort for all scheduled Fluxym resources and will result in the initiation of the Change Management process.

    b) In addition to the above interfaces, initial loads will be performed for:
        a. Cost Centers
        b. GL Accounts
        c. Currency Exchange rates

## 2.5.  Environment Architecture Scope

Ivalua Environments:

1. Fluxym Partner Development
    a. Fluxym only access – Source of truth for all project configuration pre-Go Live.
2. Ivalua Development
    a. Fluxym only access
    b. Environment for unit testing of configuration
    c. Environment for unit testing of interfaces
    d. Hosts playback activity
3. Ivalua Acceptance (Test)
    a. Environment that UAT testing is performed.
    b. Customer has access and performs testing.
4. Ivalua Production
    a. Environment that customer performs go live cut over and execution.
    b. Not testing activities are performed in this environment.

Environment Architecture Assumptions:

Two (2) transactional purge events are included in scope.  All additional transactional purge events will be subject to the change management process on a time and materials basis.

## 3. Implementation Strategy

Fluxym utilizes its proven methodology to help customers successfully implement its applications. The phases are the following and the Project Manager oversees their accomplishments.

Each step of the methodology has specific checkpoints, gates, and deliverables to ensure the Project proceeds according to the Project plan.

## 3.1.  Project Phases

This Project consists of Fluxym' methodology phases and their respective group of tasks, as outlined in the table below.



Table 1 – Project Phases



## 3.2.  Timeline and Resource Load

The following chart indicates the Project timeline. The actual Project start date will be determined post signature of the Statement of Work and agreed upon by the Customer and Fluxym. Customer understands that the rates included in this SOW are conditional of the resource allocation provided below. Any changes in the resource load and timeline will result in a Change Request with the appropriate resource effort allocation as planned per the resource load below.





# 4. Cost Estimates

The proposed Cost Estimates for the provision of Services under this SOW are presented in this section.

The Cost Estimates:

    a) Pertain to Services relating to the Project defined in this SOW;

    b) Are provided in good faith to facilitate Customer's implementation of the described Fluxym solutions;

    c) Total amount of the project will not exceed $120,000 (estimate + contingency). Any budget overage will have to approved and signed by Customer. A weekly status report will be sent to Customer including budget consumption, forecast and burn rate, and a weekly meeting will address mitigation of potential budget overages.

    d) During the implementation hourly billed tasks may fluctuate (above or below the originally estimated time and cost), the Project Managers will therefore evaluate if and when a persistent overrun in the budget will require activation of the contingency. If that's the case, then they will follow the Change Request process and the contingency will become part of the project budget only when agreed by both parties.

## 4.1. Project Services Rate Card

The Project Services Rates listed below are valid only for Services relating to this SOW and if performed within the first twelve (12) months following the Effective Date. Such estimates and the allocation of the number of Days and Hours may be subject to change during the course of the Project.

Table 2 – Project Service Rate Card

| Role | Hourly |
|---|---|
| Project Advisor / SME | ██████ |
| Project Manager/ Functional Specialist / Technical Specialist | ██████ |
| Ivalua Professional Services Rate | ██████ |



## 4.2.  Professional Services Cost Estimate

Table 3 – Estimated Project Days

| PHASE | ACTIVITY | COMMENTS | WORKLOAD (days) | TOTAL DAYS (Fluxym only) | Ivalua (Hours) IVALUA $2250 |
|---|---|---|---|---|---|
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| MOBILIZE | Readiness phase | | | | |
| | Kick off meeting | | | | |
| | Instances set-up | | | | |
| | Detailed project plan | | | | |
| | **Mobilize Total** | | | | |
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| DESIGN | Design Prep | Preparation | | | |
| | Design Prep | Initial Training Ivalua | | | |
| | Design workshops | Invoice management | | | |
| | Design workshops | Supplier Information Management | | | |
| | Design workshops | Interfaces & data initialisation | | | |
| | Design documentation | Functional specifications, including updates | | | |
| | **Design Total** | | | | |
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| BUILD | Configuration of the solution | All modules - 2 sprints | | | |
| | Configuration of the solution | Invoice data capture | | | |
| | Instances management | Tags & data, configuration transports | | | |
| | Admin training | Prep and Deliver | | | |
| | **Build Total** | | | | |
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| TEST | Training of the trainers | Based on standard | | | |
| | UAT support | Support for UAT sessions | | | |
| | Remediation | | | | |
| | **Test Total** | | | | |
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| GO LIVE | Configuration of PROD | incl. sanity check | | | |
| | Ivalua PROD set-up | inc. cutover activities | | | |
| | Go Live | Golive support | | | |
| | **Go Live Total** | | | | |
| **PROJECT** | Project Governance | Weekly, Steering... incl. Preparation, Team coordination, Finance, Schedule | | | |
| POST GO LIVE | Hypercare | 4 weeks | | | |
| | Transfer to Ivalua Support team | | | | |
| | **Post Go Live Total** | | | | |
| **TOTAL WORKLOAD** | | | | | |

| PROJECT COST | COST BY ROLE | | | | | |
|---|---|---|---|---|---|---|
| | PM | SME | FUNC | TECH | IVALUA | TOTAL |
| TOTAL ESTIMATED SERVICES COST | | | | | | |
| | | | | | | |
| | | | | | | |

Table 4 – Cost



## 5. General Conditions

1. Customer understands and agrees that Fluxym' performance is dependent upon availability of Customer's key personnel and upon Customer's timely and effective performance of its responsibilities. Tardiness in the execution of these responsibilities, including late or changed decisions, may result in additional costs and/or delays in the completion of the Project. To meet the Project's objectives and milestones, Customer and Fluxym agree to be bound by the following conditions:
   a. Any data conversion from Host systems will be the responsibility of Customer.
   b. Customer will have the responsibility to create all Standard Operating Procedures (SOPs).
   c. Customer will have the responsibility to create all test plans and test scripts.
   d. Customer will conduct thorough testing including User Acceptance Testing (UAT).
2. Services will be provided on a time and materials basis and the Cost Estimate contained herein should not be interpreted or considered as fixed or not-to-exceed.  Accordingly, documentation for all costs shall be made available, with reasonable notice, for review by Customer.
3. Fluxym will exert its best efforts to execute the implementation activities within the cost estimate and any revisions will require prior written approval by Customer.
4. All prices shown are in USD dollars.
5. Approved travel and other expenses will be invoiced as incurred (net 45).
6. Any stand-by outside of the normal business hours, for weekend and/or holiday requests for the Fluxym project team will incur a fixed carrying fee of $400 per day. Actual hours spent will be billed at the standard hourly rate on a time and material basis.
7. Customer will respond to all deliverable related actions within three (3) business days.
8. Customer will use best efforts to sign-off and approve all deliverables within 5 business days of receipt complete and accurate work product available.  Should approval not be provided within 5 days, Customer and Fluxym will assume and accept that following the five (5) day period, should no feedback be provided by the Customer, that the deliverable will be considered accepted.



# 6. Assumptions

| Category | Assumption |
|---|---|
| General | Estimate is based on a Time and Material basis |
| General | Modules included are defined in the section 2.1 |
| General | UAT will be 3 weeks: 2 for testing and 1 for remediation |
| General | Requirements should only be type 1 (Vanilla) & type 2 (Configuration) |
| General | Fluxym will propose only OOTB functionalities or configured features. No Custom software code enhancements are assumed. |
| General | If target mandatory requirement can't be met with OOTB or configured features, Fluxym will propose workarounds or custom development (by Ivalua) and potential additional cost |
| General | Our offer includes a limited number of 3 workshops for the Design phase. Decisions must be taken, and open discussions closed and validated during the workshops but not to exceed a target period of 2 business days. |
| General | Customer Admins will be trained to Ivalua configuration in order to be autonomous on minor configuration items. Session duration is 2 days |
| General | Train the Trainer model. Session duration for Trainers is 1 day |
| General | All documentation will be produced in English and will be limited to:<br>- Planning defined during the mobilization phase<br>- Design document detailing the client requirements gathered during the workshops<br>- Standard training materials |
| General | Workshops will be conducted in English |
| General | Hypercare is a support period of 4 weeks after Go Live, with a dedicated resource |
| General | All deliverables will be listed in the SOW document. There is no implied deliverable. |
| General | All Travel and Expense fees for the implementation team are in addition to our estimate |
| General | All workshops will be done remotely and will be spread through a maximum of 2 consecutive weeks |
| General | Scope and Cost Estimates are based on a project duration of 16 weeks (including 4 weeks of Hypercare) |
| General | All modules are to be implemented together, i.e. not phased |
| General | The client project team is located in the US. |
| General | Aligned procurement processes across all company entities (geographical or business entities) |
| Platform | Includes:<br>  - Branding (client logo and style sheets)<br>  - Standard homepages<br>  - Standard notifications<br>  - Up to 3 custom internal profiles<br>  - URL with Ivalua domain (like https://client-application.ivalua.com/) |
| Platform | Excludes:<br>  - Data Encryption, HSN, VPN |



| Supplier | Includes:<br>- Supplier Repository<br>- Configuration of up to 5 customized fields<br>- Supplier contact management<br>- Manual creation of supplier as an exception process (without validation) |
|---|---|
| **Purchase Orders** | Includes :<br>- One order template branded with your logo and terms and conditions<br>- Order automatically sent to the supplier through the portal and by email<br>- Configuration of up to 5 customized fields<br>- Ability to resend the PO manually as needed<br>- PDF version of the PO available<br>- Blanket Purchase order (i.e. open order)<br>- Integration with PLEX for PO integration |
| **Purchase Orders** | Excludes :<br>- Supplier acknowledgement with ability to split lines<br>- CXML or EDI purchase order<br>- Order template that are more than one page (excluding Terms and Conditions)<br>- Migration of past/active orders from legacy systems<br>- PO creation directly in Ivalua<br>- Integration for budget lookups in another system<br>- Integration for approval workflows in another system<br>- Integration with tax or logistics systems |
| **Invoices** | Includes :<br>- Standard approval workflow<br>- One Invoice process/model deployed to the whole company and subsidiaries<br>- Includes 1 invoice type<br>- Configuration of up to 5 customized fields<br>- PO to invoice flip (quantity/amount mismatch)<br>- Receipt flip<br>- Non-purchase order invoices<br>- Automated 2 or 3 way match<br>- Review 2 or 3 way match failed invoice<br>- Partial invoices<br>- Multi-tax at the invoice line level<br>- Allocations at the invoice line level<br>- Tax tolerance<br>- Additional charges for shipping or handling with manual review for appropriate cost allocation<br>- Payment data review (supplier information)<br>- Credit notes<br>- Standard Reports (Invoice browse, Standard Dashboard) |



| | |
|---|---|
| **Invoices** | Excludes :<br>- Multiple invoice processes/models per entity<br>- Automation of allocations for non-PO invoices<br>- Any restrictions on non-PO invoices<br>- Invoice received through CXML or EDI<br>- Migration of past/active invoices from legacy systems<br>- Integration for approval workflows in another system<br>- Integration with tax or logistics systems |
| **Invoices Data Capture** | Includes:<br>- Prototyping of OCR learning process on 5 different invoice structures<br>- Standard Integration with Emailed invoices |
| **Invoices Data Capture** | Excludes:<br>- Learning for all legacy invoice types & structure |
| **Interfaces & Data migration** | EDI/CXML integrations with suppliers are NOT included |
| **Interfaces & Data migration** | Initial data loads performed using Ivalua standard ETL |
| **Interfaces & Data migration** | Data cleansing is not included |
| **Interfaces & Data migration** | Estimate includes 1 ETL by transactional object |
| **Interfaces & Data migration** | ERP (PLEX) interfaces are considered for a single ERP with a single instance. If many databases are used, the objects IDs (supplier, commodities, ....) are unique for all DBs |
| **Interfaces & Data migration** | Initial Data load will be initiated by the customer admin (Test phase) |
| **Interfaces & Data migration** | Interfaces & data initialization are limited to the list in the "Interfaces" spreadsheet. Any others are considered as out of scope. |
| **Expenses** | No Expenses planned due to the current situation (COVID19). All activities will be conducted remotely |

# 7. Project Change Requests

A Change Request is a formal request to add, delete, or modify the Project scope, work plan, or budget as defined in the SOW and/or Order.

In order to implement a scope, budget or timeline change, Fluxym and Customer will submit a completed Change Request form (see Change Request Form in appendices) for acceptance before proceeding with the changed work. No Change Request will be binding upon either party until it is signed by the authorized representatives of each respective party. Each Change Request will be governed by the terms of this SOW and the MSA.

Additional charge calculations for this Project will be based on Fluxym' hourly rates, as stated in Table 2 – Project Services Rate Card, provided that the work subject to the additional charges calculations in question relates to this particular Project and is performed within the first eighteen (18) months following the Effective Date.



## 8. Approvals

In witness whereof, each party has caused this SOW, including all Appendices attached hereto (which are incorporated into this SOW by reference), to be executed by its duly authorized and empowered officers or representatives.

For: **Fluxym Canada Inc.**

Thierry JAFFRY
_____

(Type or Print Name)

*Thierry Jaffry*     12/29/2020
_____

(Authorized Signature)    (Date)

Vice President North America
_____

(Title)

For: **Challenge Mfg. Company, LLC**

*Michael F. Rodgers*
_____

(Type or Print Name)

*Michael F. Rodgers*    12/29/20
_____

(Authorized Signature)    (Date)

CFO
_____

(Title)

_____

(Type or Print Name)

_____

(Authorized Signature)    (Date)

_____

(Title)



## Appendix A – Fluxym – Change Request form

See accompanying Change Request Form in PDF format



## Appendix B - Roles and Responsibilities

| Activity | Fluxym | Customer |
|---|---|---|
| Preparation | C | A / R |
| Kick off | R | A |
| Design workshops | R | A |
| Design documents | R / A | |
| Design sign off | I | R |
| Configuration | R / A | I |
| Interfaces | R | R |
| Unit Testing | R / A | I |
| UAT scripts | C | R / A |
| User acceptance testing | C | R / A |
| Training of the trainers | R / A | C |
| Training of the end users | I | R / A |
| Go Live | R | A |
| Hypercare support | R / A | C |
| Handover to Ivalua support teams | R / A | I |
| Project Management | R / A | C |
| Project status meetings | R / A | I |
| Steering committees | R / A | I |
| Instances management | R | A |

**R**: Responsible – **A**: Accountable – **C**: Consulted – **I**: Informed



## Appendix C - Governance

| Instance | Objectives/Meetings | Frequency |
|---|---|---|
| Design Sessions | Workshops | Aligned with the number of sprints |
| Sprint Playbacks | Showcase what have been configured as per requirements on a specific topic | Aligned with the number of sprints |
| Steering Committee | Project status, Issue resolution, Decision making, Escalation | Monthly or at each major milestone of the project |
| Project Status meeting | Project status & project alignment | Weekly |
| Integrated Team Meeting | Tasks, Project Health, Issues and Impediments | Weekly |